UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HENRY WILLIAMS #820353,

    Plaintiff,

v.

UNKNOWN THORRINGTON, et al.,

    Defendants.
_____/

Case No.   2:22-cv-00019

Hon.   Paul L. Maloney
U.S. District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

This Report and Recommendation (R&R) addresses the motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) by Defendants Thorrington and Erickson.  (ECF No. 30.)

The Plaintiff in this case – state prisoner Henry Williams – filed this verified civil rights action pursuant to 42 U.S.C. § 1983 alleging that while he was housed in segregation at Marquette Branch Prison (MBP), he was denied cleaning supplies in violation of his Eighth Amendment rights.  Williams also alleged that he experienced COVID-19 symptoms within 24 hours after two COVID-19 positive prisoners were brought into his unit.

On May 31, 2023, the Court dismissed Williams's claims relating to being housed with COVID-19 positive prisoners due to his failure to exhaust his administrative remedies on this claim.  (ECF No. 25.)  Williams's remaining claim

is that he was denied cleaning supplies by Defendants Prison Counselor (PC) Thorrington and Resident Unit Manager (RUM) Erickson. (*Id.*)

Williams says that he has asthma and Defendants should have been aware of his condition. (*Id.*, PageID.8.) Williams alleges that on October 8, 2020, he was tested for COVID-19. (ECF No. 1, PageID.5.) The next day, Williams learned that he tested positive for COVID-19. (*Id.*) Williams says that while he was confined in segregation, he was denied cleaning supplies between October 8 and October 16, 2020 – after he had tested positive for COVID-19. (*Id.*, PageID.6.) Williams says that PC Thorrington told him that "[t]he best thing for you is to rest." (*Id.*, PageID.6.) Williams asserts that by denying him cleaning supplies, Defendants violated Director's Office Memorandum (DOM) 2020-30R4[1] "Personal Protective Equipment, cleaning and mitigation measures". (*Id.*, PageID.8-9.)

Defendants move to dismiss Williams's claim based upon qualified immunity. Williams did not respond to Defendants' motion. It is respectfully recommended

---

[1]   The DOMs were updated during the COVID-19 Pandemic. DOM 2020-30R4 is attached to Defendants' brief at ECF No. 31-7, PageID.256. DOM 2020-30R6 was effective at the time of the alleged events (dated August 27, 2020 and effective until it was replaced by DOM 2020-30R7 on November 5, 2020). (ECF No. 31-7, PageID.276.) The DOM provided in relevant part:

> Prisoner Hygiene and Housing Unit Cleanliness
>
> Adequate soap shall be provided to prisoners at all times. Bleach is permitted to be used and stored in the housing units, and other areas of the facility as determined by the Warden. Only prisoners who are assigned as a porter may clean with bleach, and they shall be under direct staff supervision while cleaning with bleach.

(ECF No. 31-7, PageID.282.)

that the Court grant Defendants' motion to dismiss. Williams alleges that after he contracted COVID-19, he was denied "cleaning supplies" for eight days. Williams does not challenge any of the cleaning procedures employed by MBP in response to the COVID-19 pandemic. Williams alleges only that he was denied "cleaning supplies" after he contracted COVID-19. In the opinion of the undersigned, Williams fails to allege facts that could establish that the right at issue was clearly established at the time of Defendants' alleged misconduct. Based upon the facts alleged in the complaint, Defendants are entitled to qualified immunity from liability.

## II. Motion to Dismiss Standard

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Put differently, if plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff.

3

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* Plaintiffs are proceeding *pro se*. As such, his pleadings are subject to less stringent standards than those prepared by attorneys. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972).

### III. Qualified Immunity

The issue that the Court must address is whether Defendants are entitled to the defense of qualified immunity on Williams's claim that he was denied cleaning supplies during the period he had COVID-19 between – October 8 and October 16, 2020 – while he was confined in his segregation cell. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that

4

the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

5

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ––––, ––––, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 538 U.S. 48, 63-64 (2018).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits

6

conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison

7

officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

In a 2020 case brought by federal prisoners under 28 U.S.C. § 2241, the Sixth Circuit addressed the issue of whether the Bureau of Prisons (BOP) violated the Eighth Amendment rights of medically vulnerable inmates at the Elkton Federal Correctional Institution by failing to adequately protect them from COVID-19 infection. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). In the opinion, the Sixth Circuit found that the plaintiffs in *Wilson* had easily satisfied the objective component of an Eighth Amendment claim by alleging conditions that could facilitate COVID-19 transmission within a prison and the health risks posed by the virus, certainly at least with respect to medically vulnerable inmates. *Id*. at 840. Here, Defendants concede that Williams satisfies the objective prong of an Eighth Amendment claim. (ECF No. 31, PageID.171.)

Defendants argue that Williams cannot establish the subjective prong of an Eighth Amendment claim. The Sixth Circuit in *Wilson* noted that the key inquiry was whether the BOP responded reasonably to the risk and determined that:

> Here, while the harm imposed by COVID-19 on inmates at Elkton "ultimately [is] not averted," the BOP has "responded reasonably to the risk" and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights. *Farmer*, 511 U.S. at 844. The BOP implemented a six-phase action plan to reduce the risk of COVID-19 spread at Elkton. Before the district court granted the preliminary injunction at issue, the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks. The

> BOP initially struggled to scale up its testing capacity just before the district court issued the preliminary injunction, but even there the BOP represented that it was on the cusp of expanding testing. The BOP's efforts to expand testing demonstrate the opposite of a disregard of a serious health risk.

*Id.* at 840–41. In its decision, the Sixth Circuit cited previous decisions finding similar responses by prison officials and medical personnel, such as cleaning cells, quarantining infected inmates, and distributing information about a disease in an effort to prevent spread, to be reasonable. *Id.* at 841 (citing *Wooler v. Hickman Cnty.*, 377 F. App'x 502, 506 (6th Cir. 2010); *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448–49 (6th Cir. 2014); *Harrison v. Ash*, 539 F.3d 510, 519–20 (6th Cir. 2008); *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018)).

Defendants argue that Williams's complaint fails to allege facts showing that Defendants violated his clearly established Eighth Amendment rights in October of 2020. Defendants cite *Daniels v. Huss*, 2:20-cv-235, 2022 WL 4480654, *2 (W.D. Mich. Sept. 27, 2022), where the Court granted a prison warden's motion for summary judgment based upon qualified immunity because "[p]laintiff has not provided any support that Defendant, by her actions or failures to act in the handling of the COVID-19 pandemic at MBP, violated clearly established law." Unlike in *Daniels*, this motion was brought under Rule 12(b)(6), not under Rule 56. The standard is significantly different.[2] Here the Court looks only at the allegations asserted in

---

[2] When the issue is raised prior to the completion of discovery, the plaintiff must simply respond with specific allegations of fact adequate to survive scrutiny under Rule 12(b)(6) standards. However, when the issue is raised in the context of a motion for summary judgment following an adequate period of discovery, the amount of proof required is that quantum of evidence necessary to allow a jury to return a verdict in

9

Williams's complaint and determines whether those allegations are enough to state a violation of clearly established law at the time of alleged wrongdoing. Williams alleges that after he contracted COVID-19 he was not provided with cleaning supplies in his segregation cell for eight days. Williams does not allege that the failure to provide him with cleaning supplies caused him any harm. In the opinion of the undersigned, Williams's factual allegations fail to state a claim upon which relief may be granted because they fail to rise to a violation of a clearly established Eighth Amendment right.

The general rule prior to the COVID-19 pandemic was that the failure to provide cleaning supplies over an isolated period could not violate the Eighth Amendment. *Jones v. Stine*, 843 F. Supp. 1186, 1190-1191 (W.D. Mich. 1994) (the failure to receive soap, detergents, or disinfectants "do not rise to the level of a constitutional violation, especially where the plaintiff failed to allege "that he has suffered ill-health or other physical harm as the result of unsanitary conditions.") Courts that have considered this issue in the context of the COVID-19 pandemic have reached similar results by concluding that the mere failure to provide cleaning supplies to inmates did not violate clearly established law. *See, Cavin v. Washington*, 2023 WL 5803697. *4 (E.D. Mich., Sept. 7, 2023) (allegation that prisoner was housed in COVID-19 unit and given insufficient cleaning supplies failed

---

plaintiff's favor. *Crutcher v. Commonwealth of Kentucky*, 883 F.2d 502, 504 (6th Cir. 1989); *Hull v. Cuyahoga Valley Joint Vocational School District Bd. of Education*, 926 F.2d 505 (6th Cir.), *cert. denied sub nom.*, *Hull v. Shuck*, 501 U.S. 1261 (1991).

to support a deliberate indifference claim.); *Ball v. Plasse*, 2023 WL 1766000, \*\*4-5 (S.D. Ind., Feb. 3, 2023) (granting qualified immunity to Sheriff in his individual capacity on COVID positive inmate's claim that he was subjected to poor jail conditions which included the failure to provide him with adequate cleaning supplies and soap.); *Gasaway v. Vigo County Sheriff's Dept.*, 2023 WL 3289117, \*\*5-6 (S.D. Ind., May 5, 2023) (granting qualified immunity to Sheriff in his individual capacity based upon inmates' claim that cleaning supplies were inadequate to prevent them from contracting COVID-19.); *Edge v. Mahlman*, 2021 WL 3725988, \*\*2, 7 (S.D Ohio, Aug. 23, 2021) (granting defendants qualified immunity for failing to provide prisoner with gloves and "cleaning chemical" to clean germs and viruses from sink and toilet.); *Franklin v. Washington*, 1:21-cv-313, 2021 WL 5782472, \*8 (W.D. Mich., Dec. 7, 2021) (the refusal to provide cleaning supplies preferred by prisoner does not state an Eighth Amendment claim.); *Pena v. Brown*, 2:20-cv-250, 2021 WL 4350124 (W.D. Mich., Sept. 23, 2021) (the denial of cleaning supplies for a seven day period during the COVID-19 pandemic fails to state an Eighth Amendment claim.)

Here, Williams is not questioning the MDOC's response to the COVID-19 pandemic. As stated above and addressed by this Court extensively in *Hill v. Whitmer*, 471 F. Supp. 3d 803 (W.D. Mich. 2020), the MDOC took reasonable steps to address the COVID-19 pandemic in the prison system.[3] Williams has alleged that

---

[3] The Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities included recommendations for intensifying cleaning and disinfection (ECF No. 31-5, PageID.197), including ensuring a sufficient stock of hygiene supplies are available (*id.*, PageID.199-200), providing soap to prisoners (*id.*, PageID.200, 202), and for cleaning and disinfecting

11

after he contracted the COVID-19 virus, he requested and was denied cleaning supplies from PC Thorrington and RUM Erickson between October 8 and October 16, 2020. Importantly, Williams has not alleged that the failure to provide cleaning supplies caused him any harm or was the reason that he tested positive for COVID-19. Williams has not asserted factual allegations that can support a claim establishing that Defendants acted in deliberate indifference to his health. Williams fails to allege anything more than the denial of "cleaning supplies" *after* he contracted COVID-19. In the opinion of the undersigned, Defendants are entitled to qualified immunity.

### IV. Recommendation

It is respectfully recommended that the Court grant Defendants' motion to dismiss and dismiss this case.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   October 30, 2023                         /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U.S. MAGISTRATE JUDGE

---

shared areas (*id.*, PageID.201).